UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
DISTRICT NO. 1, PACIFIC COAST     )
DISTRICT, MARINE ENGINEERS'       )
BENEFICIAL ASSOCIATION            )
AFL-CIO,                          )
                                  )
444 North Capitol Street, N.W.    )
Suite 800                         )
Washington, D.C. 20001            )
                                  )
     Plaintiff,                   )
                                  )
vs.                               )
                                  )
LIBERTY MARITIME CORPORATION,     ) Case:
                                  ) Assigned To:
1979 Marcus Avenue                ) Assign. Date:
Suite 200                         ) Description: Declaratory
                                  ) Judgment/Labor-Section 301
Lake Success, NY 11042            )
                                  )
     Defendant.                   )
_____)

**COMPLAINT TO COMPEL ARBITRATION**

District No. 1, Pacific Coast District, Marine Engineers' Beneficial Association, AFL-CIO ("MEBA" or "Union"), by its undersigned counsel, files this Complaint seeking to compel arbitration of a dispute between the Union and Defendant, Liberty Maritime Corporation ("Liberty" or "Company") pursuant to a collective bargaining agreement.

**NATURE OF ACTION**

1.  The Union brings this action pursuant to Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185. The Union seeks to compel arbitration of an active dispute under the parties' valid collective bargaining agreement.

1

## **PARTIES**

2. Plaintiff MEBA is a labor organization that represents employees in the U.S. maritime industry at ports throughout the United States and on oceangoing vessels, including individuals employed by Defendant Liberty. The Union's headquarters is located in this District.

3. Defendant Liberty is a shipping company that operates various types of seagoing vessels and employs individuals represented by MEBA on its ships as masters, mates and engineers. Liberty's shipping business includes the transport of bulk, break bulk and bagged commodities as well as a variety of Roll On/Roll Off cargos around the world for the U.S. government, the United Nations, Private Voluntary Organizations and private commercial entities.

## **JURISDICTION AND VENUE**

4. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and Section 301 of the LMRA, 29 U.S.C. § 185.

5. Venue is proper pursuant 28 U.S.C. § 1391(b) because the events giving rise to this action are substantially connected to this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) based upon Defendant Liberty's substantial contacts with this District, including conducting business within this District.

**FACTS**

6. MEBA and Liberty have been engaged in a collective bargaining relationship for almost 30 years.

7. Through their collective bargaining relationship, the parties have entered into successor labor contracts establishing the terms and conditions of employment for the MEBA members working on Liberty's tanker and dry cargo/bulk vessels.

8. Liberty first became signatory to a collective bargaining agreement with MEBA in 1988 when the Company signed on to both the Union's 1986-1990 Tanker Vessels Master Agreement and the 1986-1990 Dry Cargo Vessels Master Agreement. A copy of the 1986-1990 Tanker Vessels Master Agreement and Liberty's signature page is attached hereto as Exhibit A. A copy of the 1986-1990 Dry Cargo Vessels Master Agreement is attached hereto as Exhibit B. These agreements cover all U.S. flagged vessels owned, managed or operated by Liberty.

9. Both the Master Agreements contain grievance and arbitration provisions stating that "[a]ll disputes relating to the interpretation or performance of this Agreement shall be determined in accordance with the provisions of this Section." *See* Exhibit A, at Section 2(a), p. 10 and Exhibit B, at Section 2(a), p. 9.

10. Subsequent to Liberty becoming signatory to the Union's two master agreements, the parties have entered into various Memoranda of Understanding incorporating the terms of the master agreements with certain modifications.

11. Presently, the parties are signatory to a Memorandum of Understanding ("MOU") dated January 23, 2012. A copy of this MOU is attached hereto as Exhibit C.

12.     By letter dated July 24, 2017 Liberty notified the Union that it intended to acquire a foreign flagged vessel similar to the Company's vessels already covered by the parties' collective bargaining agreement and re-flag that vessel under the U.S Flag.  A copy of the Company's July 24, 2017 letter is attached hereto as Exhibit D.

13.     In its July 24, 2017 letter, Liberty claimed that the new vessel to be operated under U.S. Flag would not fall within the jurisdiction of the Union's collective bargaining agreement because unlike the vessels covered by the labor contract, the new vessel would not be enrolled in the Maritime Security Program ("MSP") – a federal program, the underlying purpose of which is to assure that the U.S. government and military have ready access to maritime vessels in the time of war or national emergency, as well as access to the crew on these vessels, and the intermodal structure related to the operation of the vessels.  In order to ensure this access, the federal government provides certain payments to vessel operators who participate in the MSP.

14.     Rather than agree to apply the terms and conditions of the parties' current labor contract, Liberty stated in its July 24, 2017 letter that it would only agree to modify the existing labor contract to include the new vessel if the Union agreed to a substantial reduction of total labor costs for this vessel.  Also, Liberty demanded that the new vessel would not be subject to the parties' current contractual wage reopener.  In addition, Liberty asserted in its July 24, 2017 letter that its offer was "not subject to negotiation." Finally, Liberty offered to participate in a modified arbitration process that could not result in a finding that the newly acquired vessel was covered by the parties' current labor contract.

15.     By letter dated July 26, 2017, the Union responded to Liberty's July 24, 2017.  A copy of this letter is attached hereto as Exhibit E.  In its response, the Union disagreed with the Company's claim that a newly acquired vessel, operated by Liberty under U.S. Flag, would not be covered by the parties' collective bargaining agreement.  The Union concluded its July 26, 2017 letter by stating that if Liberty went forward with its plans to bring in a newly acquired vessel to sail under U.S. Flag without applying the terms of the parties' labor contract to that vessel, the Union would exercise all its available legal rights to enforce its labor contract.

16.     Thereafter, Liberty sent the Union a letter dated July 27, 2017.  A copy of this letter is attached as Exhibit F.  In that letter, the Company offered reasons why it did not agree with the Union's claim that the parties' labor contract covered the vessel that Liberty intended to acquire.  Liberty also reinstated its offer to participate in a truncated arbitration, on terms it created, that could not result in a finding that the parties' labor contract covered the newly acquired vessel.

17.     On August 1, 2017, representatives from Liberty and MEBA met to discuss this matter.  At that meeting, both sides maintained their positions concerning the question of whether their collective bargaining agreement would cover the new vessel Liberty intended to acquire.  MEBA also asked Liberty representatives if they had met with the American Maritime Officers ("AMO") - a rival union to MEBA - to discuss manning the vessel Liberty intended to acquire.  Initially, Liberty's counsel stated that Liberty had not spoken to anyone else about the vessel.  Another Liberty representative, however, contradicted Liberty's counsel and confirmed that the Company had discussed

this matter with the Seafarer's International Union ("SIU").  AMO is affiliated with the SIU.

18.     Subsequently, in August, 2017, MEBA became aware that Liberty had carried through with its plan to acquire a new vessel and operate that vessel under U.S. Flag.  MEBA also learned that Liberty had entered into a labor contract with AMO covering this vessel.  The new vessel was renamed the Liberty Peace.

19.     Therefore, by letter dated August 31, 2017, the Union submitted a grievance to Liberty claiming that the Company violated the parties' collective bargaining agreement by failing to apply the contract to the Liberty Peace.  A copy of the Union's August 31, 2017 grievance letter is attached hereto as Exhibit G. In that letter, the Union asked Liberty to identify who the Union's counsel should contact to coordinate arbitration of the Union's grievance under the labor contract.

20.     Liberty has failed to process the Union's grievance to arbitration as required by the labor contract.  Instead, Liberty has sent multiple letters to the Union requesting copies of various MOUs and other documents that the Company should already have in its possession.

21.     The Union has responded to each of Liberty's requests and provided it with copies of the requested documents.  The Union has also objected to Liberty's repeated requests and suggested that these requests were intended to unnecessarily delay the processing of the Union's grievance to arbitration.  A copy of Liberty's requests and the Union's responses are attached hereto as Exhibit H.

22. The Union has also repeatedly asked Liberty to provide a response to the Union's grievance and agree to submit the matter to final and binding arbitration as provided for by the parties' labor contract.

23. Liberty has failed to provide a response to the Union's grievance and has not agreed to process the Union's grievance to final and binding arbitration as provided for by the parties' labor contract.

## COUNT I
**(Claim to Compel Arbitration)**

24. The Union incorporates the allegations set forth in paragraphs 1 through 23 as if set forth in full.

25. Section 301(a) of the LMRA, 29 U.S.C. § 185(a), grants this Court jurisdiction over suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting interstate commerce. The parties collective bargaining agreement is a contract under Section 301.

26. The Agreement between the Union and Liberty provides that "[a]ll disputes relating to the interpretation or performance of this Agreement shall be determined" by final and binding arbitration.

27. The Union submitted a grievance to Liberty alleging that the Liberty Peace is covered by the parties' labor contract.

28. Liberty has failed to provide a response to the Union's grievance and has failed to agree to submit this grievance to final and binding arbitration.

29. Through Liberty's action and inaction with respect to the Union's grievance, Liberty has denied the Union of its ability to resolve this dispute through the collectively bargained process.

30. Liberty should be enjoined from refusing to participate in final and binding arbitration of the Union's grievance.

## **PRAYER FOR RELIEF**

Wherefore, MEBA respectfully requests that the Court enter judgment in its favor and against Defendant Liberty as follows:

A. Enjoining Defendant Liberty from refusing to participate in final and binding arbitration concerning the Union's grievance; and

B. Compelling Liberty to participate in the arbitration process set forth in the parties' collective bargaining agreement; and

C. Granting the Union all other appropriate relief that the Court deems just and appropriate, including an award of attorneys' fees and costs.

Respectfully submitted,

DISTRICT NO. 1,
PACIFIC COAST DISTRICT,
MARINE ENGINEERS' BENEFICIAL
ASSOCIATION, AFL-CIO

By:     /s/ Mark J. Murphy

Mark J. Murphy, Bar No. 453060
Mooney, Green, Saindon, Murphy
 & Welch, P.C.
1920 L Street, N.W.
Suite 400
Washington, D.C. 20036
Tel.:  (202) 783-0010
Fax:  (202) 783-6088
mmurphy@mooneygreen.com


Counsel for Plaintiff