UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                     )
DISTRICT NO. 1, PACIFIC COAST        )
DISTRICT, MARINE ENGINEERS'          )
BENEFICIAL ASSOCIATION               )
AFL-CIO,                             )
                                     )
                Plaintiff,           )
                                     )
        v.                           )   Civil Action No. 17-2173 (ABJ)
                                     )
LIBERTY MARITIME CORPORATION,        )
                                     )
                Defendant.           )
_____)
```

## MEMORANDUM OPINION

This case involves a dispute between a labor union and a shipping company over whether a particular ship, the Liberty Peace, is covered by the parties' existing collective bargaining agreement. The question before the Court is whether the threshold issue of whether the ship is covered by the contract needs to be determined under the arbitration provision in the contract, or whether the coverage dispute must be decided first by the courts.

On October 19, 2017, plaintiff District No. 1, Pacific Coast District, Marine Engineers' Beneficial Association AFL-CIO ("MEBA" or the "union") brought this action against defendant Liberty Maritime Corporation ("Liberty") pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Compl. [Dkt. # 1] ¶ 1. The union alleges that Liberty refused to arbitrate the coverage dispute in accordance with the collective bargaining agreement, and it seeks an order compelling arbitration. *Id.* ¶¶ 25–30. After Liberty answered the complaint, *see* Ans. [Dkt. # 6], plaintiff moved for judgment on the pleadings. Pl.'s Mot. for J. on the

Pleadings [Dkt. # 10] ("Pl.'s Mot."); Pl.'s Mem. in Supp. of Pl.'s Mot. [Dkt. # 10-1] ("Pl.'s Mem.").

Because the collective bargaining agreement contains a broad arbitration provision that was intended to resolve exactly the sort of contract interpretation dispute present here, the Court will grant plaintiff's motion and refer the matter to arbitration.

## BACKGROUND

Plaintiff MEBA is a labor union that represents employees in the U.S. maritime industry who are located at ports throughout the United States and on oceangoing vessels. Compl. ¶ 2; Ans. ¶ 2. Liberty is a shipping company that operates various seagoing vessels, and many of its employees are represented by MEBA. Compl. ¶ 3; Ans. ¶ 3.

Over the past thirty years, the parties have been engaged in a collective bargaining relationship with respect to employees working on certain vessels managed by Liberty. Compl. ¶ 6; Ans. ¶ 6. In 1988, MEBA and Liberty became signatories to two collective bargaining agreements, the 1986-1990 Tanker Vessels Master Agreement, and the 1986-1990 Dry Cargo Vessels Master Agreement. Compl. ¶ 8; Ans. ¶ 8; Ex. A to Compl. [Dkt. # 1-1] ("Tanker Master Agreement"); Ex. B to Compl. [Dkt. # 1-2] ("Dry Cargo Master Agreement"). These agreements cover "all licensed marine engineers employed" on either "U.S. flag ocean-going tanker vessels," or "US flag ocean-going, dry cargo and passenger vessels" owned or operated by Liberty. Tanker Master Agreement § 36(a); Dry Cargo Master Agreement § 41.

On January 23, 2012, the parties signed a Memorandum of Understanding ("2012 MOU"). Compl. ¶ 11; Ans. ¶ 11; Ex. C to Compl. [Dkt. # 1-3] ("MOU").[1] That agreement governs three vessels, the Prestige New York, "operating under a Maritime Security Program (MSP) Agreement

---

1   This MOU is in effect until June 5, 2019. MOU § 1.

with the United States Government," and two other vessels, the Liberty Pride and Liberty Promise, "both eligible for MSP Agreements but currently operating without the benefit of any." MOU at 1. The MSP is a federal program that provides payment to certain vessel operators in order to assure the government that it will have access to vessels and crew in times of war or national emergency. Compl. ¶ 13; Ans. ¶ 13.

The 2012 MOU acknowledges and incorporates the parties' previous agreements, *see* MOU at 1 ("Whereas, the Company and MEBA are party to a Memorandum of Understanding dated September 23, 2005, as amended; various Side Letters, dated June 8, 2005, October 28, 2005, and July 14, 2010, respectively; and Letters of Understanding, dated July 7, 2009, and February 21, 2010, respectively; and arbitration awards, if any."), and it states that "[e]xcept as expressly modified by this MOU, all other terms and conditions of employment of the [collective bargaining agreements], side letters, and letters of understanding are unchanged and shall remain in full force and effect." *Id.* § 3(a). Accordingly, the grievance and arbitration procedures contained in the Tanker and Dry Cargo Master Agreements remain binding. *See* Compl. ¶ 9; Ans. ¶ 9. Both agreements require that "[a]ll disputes relating to the interpretation or performance of th[e] Agreement shall be determined" by an arbitration board consisting of two MEBA representatives and two Liberty representatives. Tanker Master Agreement § 2(a)–(b); Dry Cargo Master Agreement § 2(a)–(b). If the arbitration board cannot resolve the grievance by mutual agreement or majority vote, an agreed-upon arbitrator is authorized to render a final, binding decision. Tanker Master Agreement § 2(b); Dry Cargo Master Agreement § 2(b).

On July 24, 2017, Liberty notified MEBA by letter that it was going to charter a foreign car/truck carrier vessel and operate it under a U.S. flag. Compl. ¶ 12; Ans. ¶ 12; Ex. D to Compl. [Dkt. # 1-4] ("Ex. D") at 1. It claimed that this vessel would not fall under the parties' collective

bargaining agreement, as modified by their MOUs, because the ship was not going to be enrolled in the MSP program "for the foreseeable future." Compl. ¶ 13; Ans. ¶ 13; Ex. D at 1. Liberty offered to amend the terms of the 2012 MOU to cover the new vessel so long as certain non-negotiable conditions were met. Compl. ¶ 14; Ans. ¶ 14; Ex. D at 3. It also stated that if the union agreed to the amendment but wished "to reserve its right to assert that the terms of the 2012 MOU apply to the vessel to be reflagged," Liberty would "agree to arbitrate" that issue subject to certain conditions as well. Comp. ¶ 14; Ans. ¶ 14; Ex. D at 3.

The union disagreed with Liberty's position and insisted that the new vessel was covered by the parties' agreements. Compl. ¶ 15; Ans. ¶ 15; Ex. E to Compl. [Dkt. # 1-5]. One week later, the parties met to discuss the matter, but they failed to reach a resolution. *See* Compl. ¶¶ 17–18; Ans. ¶¶ 17–18.

Liberty, as the agent of a third party, now manages a vessel named the *M/V Liberty Peace* ("Liberty Peace"). *See* Compl. ¶ 18; Ans. ¶ 18. The third party entered into labor agreements with American Maritime Officers and Seafarer's International Union rather than with MEBA. Compl. ¶¶ 17–18; Ans. ¶¶ 17–18.

On August 31, 2017, MEBA submitted a grievance to Liberty claiming that Liberty violated the collective bargaining agreement. Compl. ¶ 19; Ans. ¶ 19; Ex. G to Compl. [Dkt. # 1-7] ("Ex. G"). The letter also included a demand for arbitration to resolve the contractual dispute. Compl. ¶ 19; Ans. ¶ 19; Ex. G. While the parties have been engaged in the exchange of information and documents, Liberty has not processed the grievance and the parties have not engaged in arbitration. Compl. ¶¶ 20–23; Ans. ¶¶ 20–23; *see* Ex. H to Compl. [Dkt. # 1-8].

On October 19, 2017, MEBA filed suit in this Court to compel arbitration, Compl., and it has moved for judgment on the pleadings. *See* Pl.'s Mot. The union argues that it is entitled to an

4

order compelling arbitration as a matter of law based on the terms of the collective bargaining agreement between the parties. Pl.'s Mot. at 1; Pl.'s Mem. at 1, 9–10. Defendant opposed the motion, arguing that no obligation to arbitrate has arisen because "no collective bargaining agreement or other contract between the parties . . . applies to the *M/V Liberty Peace*." Def.'s Opp. to Pl.'s Mot. [Dkt. # 11] ("Def.'s Opp.") at 1–2.[2]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) authorizes a party to move for judgment on the pleadings at any time "after the pleadings are closed." Fed. R. Civ. P. 12(c).[3] Parties are entitled to pretrial judgment on the pleadings "if the moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008), quoting *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992). When analyzing a motion for judgment on the pleadings, the Court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Peters*, 966 F.2d at 1485, quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988); *see Thompson v. District of Columbia*, 428 F.3d 283, 284 (D.C. Cir. 2005) (viewing the complaint's allegations in the light most favorable to the plaintiff when the defendants filed a 12(c) motion); *see also Hall v. District*

---

2   Plaintiff also filed a reply. Pl.'s Reply in Supp. of Pl.'s Mot. [Dkt. # 12] ("Pl.'s Reply").

3   Pleadings are closed for Rule 12(c) purposes when a complaint and an answer have been filed. *See* Fed. R. Civ. P. 7(a); *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 60 (D.D.C. 2007) ("Pleadings are closed within the meaning of Rule 12(c) if no counter or cross claims are at issue when a complaint and an answer have been filed.").

5

*of Columbia*, 867 F.3d 138, 152 (D.C. Cir. 2017) ("A Rule 12(c) motion considers the defendant answer together with the complaint.").

While there are opinions in this district that state that the standards of review for a Rule 12(b)(6) motion and a Rule 12(c) motion are "essentially the same" or "virtually identical," *see, e.g.*, *Nat'l Shopmen Pension Fund v. Disa*, 583 F. Supp. 2d 95, 99 (D.D.C. 2008), citing *Plain v. AT & T Corp.*, 424 F. Supp. 2d 11, 20 n.11 (D.D.C. 2006); *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 58 (D.D.C. 2007); *Jung v. Ass'n of Am. Med. Colls.*, 339 F. Supp. 2d 26, 35–36 (D.D.C. 2004), the standard set out in the *Schuler* case by the D.C. Circuit more closely resembles a summary judgment type of determination.

Wright's Federal Practice and Procedure makes the same observation, noting that a Rule 12(c) motion asks a court to address the merits of the parties' claims and defenses and not simply procedural barriers or pleading deficiencies. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1369 (3d ed. 2017) (commenting that the appropriate standard of review for a Rule 12(c) motion is more similar to a Rule 56 motion for summary judgment, except that the Court may only consider the contents of the pleadings); *see also Jones v. Dufek,* 830 F.3d 523, 528 (D.C. Cir. 2016) ("The district court properly resolved these questions as a matter of law on a motion under Rule 12(c)."), citing *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993)

("[T]he standard courts apply for summary judgment and for judgment on the pleadings 'appears to be identical.'").[4]

## ANALYSIS

The union seeks to compel arbitration of the parties' dispute over whether the collective bargaining agreement covers the work performed on the Liberty Peace. *See* Compl.; Pl.'s Mem. at 1–2; 6. Liberty does not deny that the parties are signatories to labor contracts, or that they agreed to arbitrate disputes relating to the interpretation and performance of those agreements. Ans. ¶¶ 7–9. But it maintains that because the parties did not reach an agreement to man the Liberty Peace, there is no collective bargaining agreement between the parties, and no agreement to arbitrate any dispute that has arisen in relation to that vessel. Def.'s Opp. at 3.

While Liberty tries to complicate matters, this case is straightforward. The question the Court must resolve is whether the subject matter of the union's complaint falls within the arbitration provision of the existing collective bargaining agreement between the parties. *See* Pl.'s Mem. at 6 (arguing that the parties' "collective bargaining agreement contains a grievance/arbitration provision intended to resolve disputes between the parties"); Def.'s Opp. at 6 ("Liberty . . . denies there is any collective bargaining agreement between Liberty Maritime and

---

4    *See also Landmark Am. Ins. Co. v. VO Remarketing Corp.*, 619 F. App'x 705, 708 (10th Cir. 2015) ("Granting a motion for judgment on the pleadings requires the movant to establish an absence of any issue of material fact and entitlement to judgment as a matter of law."); *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) ("A grant of judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.") (internal quotation marks omitted); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008) ("[Rule 12(c)] [j]udgment will only be granted where the moving party clearly establishes there are no material issues of fact, and that he or she is entitled to judgment as a matter of law."); *Nat'l Fid. Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987) ("A motion for judgment on the pleadings may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law.") (internal citation omitted).

the Union that applies to the subject matter of the Union's Complaint . . . ."). The Court agrees with the union that it does, so it will refer this matter to arbitration.

The Supreme Court has laid out the framework for determining when disputes are arbitrable. *See Granite Rock v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010). "Under that framework, a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Id.* (emphasis in original). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960); *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 947 (1995) ("[A]rbitration agreements, like other contracts, are enforced according to their terms, and according to the intentions of the parties.") (internal citations and quotation marks omitted).

There are three types of disputes over arbitrability that commonly arise: (1) disputes over the formation of an agreement to arbitrate; (2) disputes over the breadth of an arbitration clause where the parties disagree over whether an issue falls within the scope of an agreement to arbitrate; and (3) disputes that relate to the duration of an arbitration clause. *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Maritime Corp.*, 815 F.3d 834, 844 (D.C. Cir. 2016), citing *Nat'l R.R. Passenger Corp. v. Bos. & Me. Corp.*, 850 F.2d 756, 761 (D.C. Cir. 1988). Formation and breadth disputes are typically decided by courts.[5] *Id.*; *see also Granite Rock*, 561 U.S. at 296 (concluding that disputes over "formation of the parties' arbitration agreement" and "its enforceability or applicability to the dispute" at issue are "matters . . . the court

---

5  The D.C. Circuit has observed that "[a] duration dispute is a different animal" that involves a different set of "general rules." *Liberty Maritime Corp.*, 815 F.3d at 844. Since neither party argues that this case involves a duration dispute, the Court need not concern itself with the different presumptions that are used to analyze those disputes.

8

must resolve"); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002) (observing that questions such as "whether the parties are bound by a given arbitration clause," or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy" are questions for the court to decide); *AT & T Techs., Inc. v. Commc'ns Workers,* 475 U.S. 643, 649 (1986) (holding that "the question of arbitrability – whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination," unless the parties "clearly and unmistakably provide otherwise"), citing *Warrior & Gulf Nav. Co.*, 363 U.S. at 582–83.[6] Applying those principles here, it is up to the Court to decide whether the substantive disagreement between the parties – that is, whether the new vessel is covered by the collective bargaining agreement – falls under the arbitration clause. If a court decides that parties "have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims"; "it is for the arbitrator to determine the relative merits of the parties' substantive interpretations of the agreement." *AT & T Techs., Inc.*, 475 U.S. at 649, 651.

Liberty argues that the dispute in this case is not simply about the breadth of the arbitration clause, but that it is a "formation dispute" because the "central question" is whether a collective bargaining agreement exists between the parties under which the union can assert its right to

---

6     Neither party appears to dispute that the Court should decide the "arbitrability" question here.

arbitrate.[7] Def.'s Opp. at 11. It contends that before compelling arbitration, the Court must decide whether a valid collective bargaining agreement exists between the parties. *Id.* at 9. To support

---

[7] Liberty also maintains that because it denies the existence of any collective bargaining agreement that covers the Liberty Peace, judgment on the pleadings is inappropriate. Def.'s Opp. at 4–8. It argues that because plaintiff filed the 12(c) motion, the Court must view the facts in the light most favorable to Liberty and deem the union to have admitted the facts put forth in Liberty's answer. *Id.* While Liberty correctly refers to the 12(c) standard, it takes it too far. Although "[i]t is axiomatic . . . that for purposes of the court's consideration of the Rule 12(c) motion, all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false," 5C Wright & Miller § 1368, the Court "is not bound to accept the legal conclusions of the non-moving party." *Baumann v. District of Columbia*, 744 F. Supp. 2d 216, 222 (D.D.C. 2010); *see also* 5C Wright & Miller § 1368 & n.11 ("Although a moving party, for purposes of the Rule 12(c) motion, concedes the accuracy of the factual allegations in his adversary's pleading, he does not admit other assertions in the opposing party's pleading that constitute conclusions of law . . . ."). Liberty's assertion that no agreement existed to cover the Liberty Peace is not a fact; it is a legal conclusion based on its own interpretation of the parties' collective bargaining agreement. *See Local Union No. 47, Int'l Bhd. of Elec. Workers v. NLRB*, 927 F.2d 635, 640 (D.C. Cir. 1991) ("We accord no special deference, however, to ultimate legal conclusions that rest on the Board's interpretation of a collective bargaining contract."). Therefore, defendant has not raised a material dispute of fact that would foreclose granting judgment on the pleadings.

Defendant also raises a jurisdictional affirmative defense, and it argues "that if proven[, it] will defeat the Union's demand that Liberty be required to arbitrate anything concerning the *M/V Liberty Peace*." Def.'s Opp. at 7. Defendant maintains that the Court does not have jurisdiction over the complaint "because the matter concerns representational rights," and so the case is "entirely preempted" by the National Labor Relations Act. *Id.* Although defendant mentions this affirmative defense in its opposition, it provides no further argument.

The National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–169, "establishes a federal regime for managing labor relations and generally authorizes the National Labor Relations Board (NLRB) to resolve disputes between labor organizations and employers." *Liberty Maritime Corp.*, 815 F.3d at 839. The NLRB has exclusive jurisdiction over claims that fall under the NLRA, but the Labor Management Relations Act ("LMRA") carves out an exception for lawsuits "for violations of contracts between an employer and a labor organization." *Id.* at 840, quoting 29 U.S.C. § 185(a). Therefore, if a labor dispute is contractual, preemption does not apply. *Id.* If claims are both contractual and representational, "that is, a claim that alleges that conduct violates a collective bargaining agreement and also constitutes an unfair labor practice or otherwise violates the NLRA," federal courts can retain jurisdiction. *Id.*, citing *William E. Arnold Co. v. Carpenters Dist. Council*, 417 U.S. 12, 16 (1974). The Court must examine the issues and determine whether they can be characterized as primarily representational or contractual; merely framing the issue as contractual will not afford a district court jurisdiction over the case. *Id.*, citing *Local Union 204, Int'l Bhd. of Elec. Workers v. Iowa Elec. Light & Power Co.*, 668 F.2d 413, 419 (8th Cir. 1982). [Continued on next page].

its argument, Liberty relies heavily on the Supreme Court's language in *Granite Rock* that "the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Id.* at 10, quoting *Granite Rock*, 561 U.S. at 297. According to Liberty, its assertion that the parties never entered into an agreement governing the Liberty Peace also calls into question the formation of the arbitration clause. *See id.* at 9–11.

In *Granite Rock*, a union and an employer were parties to a collective bargaining agreement ("CBA") that expired, and when negotiations stalled, the union members went on strike. 561 U.S. at 292–93. Eventually the parties agreed to a new CBA that included both an arbitration provision and an anti-strike provision, but the agreement did not address the employer's damages arising from the strike. *Id.* Because the parties were unsuccessful in negotiating a separate agreement over those damages, the members remained on strike. *Id.* at 293. The employer sued the union for damages for violating the anti-strike provision of the new CBA. *Id.* at 294. The parties disagreed over when the new CBA had been ratified, and the union argued that an arbitrator, rather than a court, should decide when ratification occurred. *Id.* at 294–95. The Supreme Court

---

[Continued from previous page]. Here, the union alleges that the district court's jurisdiction arises under Section 301 of the LMRA. Compl. ¶ 4. Defendant challenges the Court's jurisdiction under Section 301, arguing that MEBA's suit is representational, not contractual, in nature. *See* Def.'s Opp. at 7. But plaintiff's suit plainly requires deciding a contractual matter: whether the arbitration clause covers the dispute at issue. As the D.C. Circuit recently observed in another case in which it rejected the same argument made by Liberty, "Liberty's argument . . . suffers from a fatal flaw: it conflates the type of claim with the effect of a claim's enforcement." *Liberty Maritime Corp.*, 815 F.3d at 843 (concluding that deciding what constitutes "impasse" and whether Liberty's conduct breached the parties' agreement was a purely contractual matter, even if the decision could have a representational effect). And while "[t]he decision may ultimately have a representational effect in that MEBA could, under the terms of the contract, be reinstated as the representative of Liberty's officers and engineers, . . . that effect results from the enforcement of the CBA, not from the resolution of any representational question." *Id.* Therefore, the Court concludes that it has jurisdiction over this case, and that defendant's affirmative defense fails.

disagreed, holding that ratification determined the date on which the parties formed their agreement to begin arbitrating disputes. *Id.* at 303–05. Therefore, the district court was required to decide "the CBA's ratification date in order to determine whether the parties consented to arbitrate the matters covered by the [arbitration] demand." *Id.* at 304.

Liberty's attempt to fit this case into the formation dispute category is unavailing. A formation dispute occurs when the parties disagree over whether they "ever agreed to submit anything to arbitration in the first place." *Bos. & Me. Corp.*, 850 F.2d at 761. The issue in *Granite Rock* "was when the contract went into effect – a formation issue that, in that case, was central to determining whether the parties had agreed to arbitrate *any* dispute." *Liberty Maritime Corp.*, 815 F.3d at 845 (discussing *Granite Rock*).

Here, formation is not at issue. Both parties acknowledge that they entered into an enforceable collective bargaining agreement and that the 2012 MOU incorporates the parties' existing agreements, which include the arbitration clause. Compl. ¶¶ 7–9, 11; Ans. ¶¶ 7–9, 11. Rather than disagree over when the collective bargaining agreement went into effect, the parties dispute if the work performed on the Liberty Peace is covered by the agreement. *See* Pl.'s Mem. at 6; Def.'s Opp. at 1, 6. Thus, the dispute falls into a different category – it is one of breadth. *Bos. & Me. Corp.*, 850 F.2d at 761 (stating that a breadth dispute occurs where "parties disagree over whether a certain issue falls within or without the subject matter coverage of an undoubted agreement to arbitrate"). So, the only question before the Court is whether this controversy falls within the arbitration clause. *See AT & T Techs., Inc.*, 475 U.S. at 648–52 (holding that it was for the court to make the initial decision of whether a labor-management lay-off controversy fell within the arbitration clause and was thus "arbitrable"). The answer is yes.

The Supreme Court has held that there is a strong "federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Warrior & Gulf Nav. Co.*, 363 U.S. at 582–83; *AT & T Techs., Inc.*, 475 U.S. at 650. When a contract contains an arbitration clause, a presumption of arbitrability arises, which is generally not overcome unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc.*, 475 U.S. at 650, quoting *Warrior & Gulf Nav. Co.*, 363 U.S. at 582–83; *see also Wash. Mailers Union No. 29 v. Wash. Post Co.,* 233 F.3d 587, 591 (D.C. Cir. 2000) (applying the presumption to the parties' dispute over the interpretation of "regular, full-time positions" in the labor contract and concluding that the arbitration clause plausibly included the dispute at issue, and ordering the parties to arbitration). The presumption is particularly applicable where the arbitration clause is as broad as the one employed in this case. *See* Tanker Master Agreement § 2(a)–(b); Dry Cargo Master Agreement § 2(a)–(b) ("All disputes relating to the interpretation or performance of this Agreement shall be determined in accordance with the provisions of this Section."); *AT & T Techs., Inc.*, 475 U.S. at 650 (applying presumption where clause called for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder"); *Liberty Maritime Corp.*, 815 F.3d at 846 (holding that the same arbitration clause at issue in this case was "quite broad" and analogous "to the 'broad' arbitration clause to which the Supreme Court found the presumption of arbitrability 'particularly applicable'" in the *AT & T Techs., Inc.* case).

The dispute over whether the work performed on the Liberty Peace is covered by the collective bargaining agreement falls squarely within the scope of the arbitration clause since the resolution of the dispute involves both the "interpretation" and "performance" of the collective

bargaining agreement.  Liberty failed to point to any evidence to rebut the presumption of arbitrability, and no agreement between the parties contains language excluding this sort of dispute from arbitration.  Therefore, the requirement set forth in *Granite Rock* has been met:  the Court is "satisfied that the parties agreed to arbitrate *that dispute*."  *Granite Rock Co.*, 561 U.S. at 288 (emphasis in original).

## CONCLUSION

For the foregoing reasons, the Court will grant plaintiff's motion for judgment on the pleadings and compel arbitration.  A separate order will issue.

                                     /s/ Amy B. Jackson
AMY BERMAN JACKSON
United States District Judge

DATE:  September 14, 2018